Livesey v. Festner.

●

ROBERT E. LIVESEY, APPELLEE, V. FREDERICK C. FESTNER, APPELLANT.

[FILED DECEMBER 31, 1889.]

1. **The Evidence** examined, and *held*, to sustain the findings and decree of the district court.

2. **New Trial:** NEWLY DISCOVERED EVIDENCE. A new trial will not be granted on the ground of newly discovered evidence where the evidence alleged to be newly discovered is merely cumulative to evidence given upon the trial.

3. ———: ———: CASE STATED. The defense having been predicated upon the alleged facts that the plaintiff had contracted to place twenty inches of concrete under a certain party wall and had only placed a footing of fourteen inches of concrete thereunder, and the defendant having at the trial called and examined witnesses, including himself, who testified to such facts in respect to the thickness of the concrete as put in, a motion for a new trial, upon a showing that since the trial defendant

had discovered evidence that the said concrete footing was in fact only twelve and a half or thirteen inches thick, *held*, rightly refused.

APPEAL from the district court for Douglas county. Heard below before GROFF, J.

*H. B. Holsman*, for appellant.

*Kennedy & Learned*, for appellee.

COBB, J.

This cause was appealed from the district court of Douglas county.

The appellee complained in the court below that on April 21, 1887, he entered into a written contract with the appellant to furnish the material and labor necessary to build and complete in a good, first-class, and workmanlike manner the mason and brick work, excavating, concreting, pressed brick, and cut stone work for the erection of a brick store building on the east half of lot 2, in block 167, in Omaha, in said county. A copy of the contract was exhibited. For this work the appellant agreed to pay the appellee the sum of $5,100. It was also agreed that the appellee should do extra digging and concreting for the sum of $198, and extra brick work in the basement and first story for the sum of $120, which sums the appellant agreed to pay. In pursuance of which the appellee alleged that he performed all the work, and furnished all the materials required and specified under said contracts, for the erection of said building between April 21 and August 1, 1887, amounting in the aggregate to the sum of $5,418, and other extra work amounting to $7 additional. The appellant at the time was the owner in fee of said lot.

It was alleged that on November 1, 1887, within four months of the time of doing said work and furnishing said materials, the appellee made an account in writing of the

amount and value of the same, and, after making oath thereto, filed the same, together with the contract, in the clerk's office of said county, and thereby claimed a mechanic's lien on said lot and buildings for the unpaid balance due him from the appellant under said contract, which was $886, there having been paid prior to said last date the sum of $4,530 ; and there was paid for filing the lien, fees of $3.25; that said sum of $886, with interest at seven per cent per annum from November 1, 1887, and the fees for recording the lien remain due and upaid thereon. The appellee asked judgment for the amount due and costs and that the premises be sold to pay the same, etc.

The appellant answered, in the court below, admitting that on April 21, 1887, he entered into a written contract as in the appellee's petition set forth, but denying that appellee performed all the work required of him under said contract, or that he furnished the materials specified. He further set up that the appellee did not build the wall, or lay in concrete, as in the contract required; that said wall was to be used as a party wall; that appellee knew of this fact, and that the concrete was to be made of the depth of twenty inches, and was but fourteen inches, and that when so laid appellant was to receive from adjoining property owner one-half of the cost of its erection, but that by reason of the failure of appellee to do as contracted, appellant was greatly damaged in the sum of $1,000. And he further averred that the appellee did not receive, nor had he received up to that date, a certificate from the architect entitling him to final payment; and demanded judgment for the difference of said sums in $110.75, and that the lien of appellee be removed.

The appellee replied denying each and every allegation of the answer.

There was a trial to the court without a jury, upon the petition, answer, replication, and evidence; on consideration whereof the court found there was due to the appellee from

the appellant, on account of the matters set forth in the petition, the sum of $922.78 and interest at seven per cent per annum from May 14, 1888; and that on November 3, 1887, the appellee made an account in writing of the items and matters set forth in the petition, together with the written contract existing between the parties, and after making oath thereto, as required by law, filed the same in the clerk's office of said county, and the same was duly recorded therein. The court further found that the appellee had a first valid and subsisting mechanic's lien for said sum of $922.78 and interest upon the premises described in his petition, to-wit, the east one-half of lot 2, in block 167, in the city of Omaha, in said county, and that the appellee was entitled to have said lien enforced. It was therefore considered, adjudged, and decreed by the court that said appellee have and recover from the appellant, Frederick C. Festner, the said sum of $922.78 and interest thereon at seven per cent from May 14, 1888, and his costs in this action; and in case the same was not paid within twenty days from the entry of that decree, an order should issue to the sheriff of that county commanding him to sell said premises as upon execution and apply the proceeds thereof in payment of the amount so found due upon the confirmation of said sale. To all of which said findings and decree the appellant excepted .on the record and appealed the cause to this court.

There is neither a petition in error, nor assignment of error in this case. Therefore the errors argued by counsel in their brief cannot be considered. The only issue presented by the pleadings is that arising in the allegations of the petition as stated. The contract between the parties was introduced in evidence by the plaintiff. As it appears in the bill of exceptions it is seen that the plaintiff agreed to furnish the material and perform the labor necessary to build, finish, and complete, in a first-class, workmanlike manner, to the full and complete satisfaction of the defend-

ant, all of the mason work, including brick work, excavating, concreting, pressed brick and cut stone for a brick store building to be erected on the half lot therein described; the furnishing of material and performance of labor to be under the supervision and direction of Geo. L. Fisher, architect, and to be in accordance with the plans and specifications, including all writing and figuring on the same, and which plans and specifications were declared to be a part of the contract. The plans and specifications, however, were not introduced in evidence. It seems to have been taken for granted by all parties throughout the trial that the contract in its terms, or the plans and specifications, or some order of the architect, required the concrete footing under one of the walls of the building designated as a party wall to be twenty inches in depth. The plaintiff, as a witness in his own behalf, testified, among other things, that it was the contract and agreement between the parties that the concrete footing under the party wall should be twenty inches in height, and that the concrete of the present building is twenty-two inches thick from one end to the other. On cross-examination he repeated that he made the concrete twenty-two inches. To the question, "When did you make the measurements so that you ascertained the depth of the concrete?" he answered, "At the time we placed it in; and also stated that Nelson, Anderson, and Whitit, men who were working for him at the time, were present when he did it." He further testified in answer to

Q. In what way did you make the measurement, rod or line?

A. No, sir;— we take — with the laborers we generally take — in a trench, that way, we generally drive stakes down to the depth we wish it, and we generally place three stakes, one at the end, at each end, and one in the middle, so they can keep it straight, and we place them probably six or seven feet apart, near the trench.

22

Q. The original depth of the concrete was to be fourteen inches, wasn't it?

A. There was only one bargain that I understood, that is all I say; we understood it was to be twenty inches thick, and it was made at the time we started the work; when we dug our trenches out clear through, why we placed all the concrete and put our stakes accordingly for that purpose.

Fisher, the architect, was called as a witness for the plaintiff and was examined and cross-examined at length. He did not state directly the required depth of the concrete footing, nor was he asked the question in direct terms. He was asked, "How thick did Mr. Livesey lay that concrete under the wall?" which he never answered, except inferentially. He stated that he knew at the time the concrete was put in that exceptions were taken to it as not of the requisite thickness. Livesey was ordered by him and by Festner to put on a layer and bring it up to the required thickness; that it was then from seventeen to eighteen inches thick at the time the order was given. In answer to the question, "How thick, if you know, was the last layer put on?" he stated, "Well, I was not there, of course, all the time when the concrete was being put in, so that I could not say exactly in reference to the whole thing. I know that Mr. Livesey put on more concrete at the time, after it was seventeen or eighteen inches thick." The witness stated that he knew what the contract required of Livesey; that witness was the architect of the building. In answer to the question, "Did Mr. Livesey live up to his contract in constructing that concrete base?" he answered, that he supposed that he did up to—in general, or he would not have issued certificates that he was entitled to for payment. The witness further testified that Festner called him down there one day, and he excavated below the concrete, and at a certain point, at the edge, it did not come up to the required thickness, so at that point in the concreting there seemed to be a little doubt. Here the court asked the witness, "What was the

shortage?" and, instead of answering directly, he replied, "Well, we measured it, and, if I remember, we measured about fifteen inches."

Three other witnesses, Nelson, Anderson, and Whitit, who had been employed on the work by Livesey, but not at the time of the trial, stated that the concrete under this wall was more than twenty inches thick, one or two placing it at twenty-four or twenty-five inches, but none had actually measured it; and, upon cross-examination, there was doubt of the correctness of their arrival at the facts testified.

The defendant called a number of witnesses, several of whom had digged down the side of the walls, and measured the concrete footing, and none testified that it was more than fourteen inches in depth.

While to my mind the preponderance of evidence is against the proposition that the concrete footing under the party wall was of the depth of twenty inches, or to exceed fourteen inches, yet it cannot be said that there was not evidence to sustain the findings of the court in favor of the plaintiff. Such finding, therefore, cannot be disturbed for want of proof. The findings and decree of the court were made on the 23d day of July, and on the 3d of August following the defendant offered his motion for a rehearing, in the nature of a new trial, on the ground of newly discovered evidence. I do not think the motion is correctly stated in the transcript: the substance of it is, that, "since the hearing of the cause in this court, additional testimony has been developed in support of its defense." It is an inflexible rule governing courts in deciding applications for a new trial on the ground of newly discovered evidence, that the discovery must not be that of merely cumulative evidence. In this instance, the language of the motion, as we find it of record, amounts well-nigh to an admission that its newly discovered or newly developed testimony is merely additional and cumulative.

Livesey v. Festner.

In support of the motion are filed the affidavits of five witnesses, including that of the defendant. He states that since the trial he had discovered that "the plaintiff did not use more than thirteen inches of concrete in making the walls of the building, and that he was not aware, at the time of the trial, of the evidence of that fact." The other four affidavits were those of architects and builders, and were to the effect that since the trial they had, at the request of the defendant, dug down under the wall of the building and had found that the concrete footing under the wall was not to exceed thirteen inches in thickness; one or more stating that it averaged but twelve and one-half inches, and that footings of that thickness were inadequate to support a wall of the weight and character of that in question.

The defendant predicated his entire defense upon the fact that the plaintiff had agreed to place twenty inches of concrete under the party wall, and had only placed a footing of fourteen inches; and the whole trial, including the examination of both parties and a number of witnesses on either side, had been directed to the facts involved in the question of the depth and thickness of the concrete footings.

I do not think that the discovery, after the trial, that the concrete was in fact only twelve and one-half or thirteen inches in thickness, or that in charging his adversary with footings deficient only in six inches of thickness he was too liberal towards him—nor do I think that the discovery of the existence of the fact, and his ability to prove it—can be held to be of that class of evidence the final discovery of which would entitle the party to a new trial on those familiar grounds.

The decree of the district court, and its order overruling the motion for a new trial, are affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.